**Felix JUSTIZ–CEPERO, Plaintiff,**

**v.**

**I.N.S., et al., Defendants.**

**No. 91–3381–RDR.**

United States District Court,
D. Kansas.

March 31, 1995.

Felix Justiz Cepero, Three Rivers, TX, pro se.

Melanie D. Caro, Office of U.S. Atty., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on a civil rights complaint filed by a Cuban detainee in custody pursuant to an Immigration and Naturalization Service ("INS") detainer. He alleges he is housed improperly in a Bureau of Prisons facility and that he is subjected to cruel and unusual punishment by his placement in D–Cellhouse at the United States Penitentiary, Leavenworth, Kansas ("USPL"). He seeks damages and transfer to an INS Detention Center. Defendants have filed a motion to dismiss or for summary judgment (Doc. 16), and plaintiff has filed a response (Doc. 18). Having examined the record, the court makes the following findings and order.

### Factual Background

Petitioner was housed at USPL from April 12, 1989, until December 8, 1989, pursuant to a twelve year criminal sentence. Following the expiration of his sentence on December 8, 1989, he remained in general population at USPL, until he received notice of repatriation on February 1, 1991. At that time, plaintiff was placed in the D–Cellhouse at the facility.

In February 1992, petitioner was transferred to the Federal Correctional Institution at Talladega, Alabama, for repatriation. Due to the pendency of civil actions in this district,[1] he was returned to USPL shortly thereafter. Upon review of his records, staff at USPL determined plaintiff could function in the general population, and he entered population on May 15, 1992.

The D–Cellhouse living unit at USPL is a secured housing area where most unsentenced Cuban detainees are housed, as well as so-called "holdovers", typically inmates in transit who have not yet been tried or sentenced. Inmates in the unit have restricted movement and generally do not come in contact with inmates in general population who are serving criminal sentences. Placement in the D–Cellhouse Unit routinely follows the delivery of repatriation papers due to increased assaultive behavior which sometimes follows this development.

Cuban detainees at USPL have some access to educational and work programs, including English as a Second Language, Adult Basic Education, and General Equivalency classes. Some inmates work within the unit in orderly and painter positions; others work in the institution laundry. Limited production work is available through Federal Prison Industries. Some recreational opportunities are available five days a week.

### Discussion

*Standard for granting summary judgment*

Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The moving par-

1. In addition to this action, plaintiff filed two petitions for habeas corpus relief while housed at the United States Penitentiary, Leavenworth, Kansas; *Justiz–Cepero v. Thornburgh*, 882 F.Supp. 1572, and *Justiz–Cepero v. Board of Immigration Appeals*, 882 F.Supp. 1575.

ty has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir.1990).

*Detention in correctional facility*

■ Plaintiff first appears to challenge his placement in a prison. It is now generally accepted that the Attorney General has statutory authority to detain indefinitely an excludable alien who cannot be immediately returned either to his country of origin or to another country. *See Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1148, n. 4 (9th Cir.1995) (citing cases). The authority of the Attorney General to detain appears to include broad discretion to house immigration detainees in appropriate facilities, provided constitutional conditions of confinement exist. *See* 8 C.F.R. § 212.12(a) (parole provisions applicable to Mariel Cuban detainees detained in any facility, or awaiting transfer to an INS or Bureau of Prisons facility.) Plaintiff's history of a felony conviction supplies a reasonable basis for the decision to detain him in a correctional facility following the expiration of his criminal sentence. The court therefore finds no constitutional error in plaintiff's placement.

■ Plaintiff next argues his placement in the D–Cellhouse at USPL was arbitrary and capricious. Because plaintiff was not a sentenced inmate at the time of his placement in that unit, and thus was not subject to punishment, the conditions of his confinement must be evaluated under the Due Process Clause, which requires that conditions of confinement meet certain minimal standards for persons confined under governmental authority. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535, n. 16, 545, 99 S.Ct. 1861, 1872, n. 16, 1977, 60 L.Ed.2d 447 (1979) (pretrial detainees); *Youngberg v. Romeo*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982) (mental health facilities); *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244–45, 103 S.Ct. 2979, 2983–84, 77 L.Ed.2d 605 (1983) (arrestees).

■ Having considered the record, the court finds the conditions described by plaintiff do not violate constitutional guarantees. Although the conditions described by plaintiff are indeed harsh, it is apparent plaintiff's essential needs of food, clothing, shelter, and medical care were provided. Likewise, the decision to house plaintiff in an area with restricted movement and among those similarly situated is a reasonable management decision by Bureau of Prisons officials.[2] Accordingly, the court finds the plaintiff's placement in D–Cellhouse was not arbitrary and capricious, nor did the conditions there violate the minimal standards guaranteed by the Due Process Clause.

IT IS THEREFORE ORDERED defendants' motion for summary judgment is granted. This matter is hereby dismissed and all relief is denied.

---

2. Defendants cite the potentially volatile emotions which frequently attend the service of documents concerning repatriation efforts as a basis for the management decision to place inmates receiving such notices in the D–Cellhouse. The court takes note of disturbances by Mariel Cubans in prisons in Atlanta in 1984 and 1987, Oakdale, Louisiana, in 1987, and Talladega, Alabama in 1991. A brief description of the Oakdale disturbance appears in *Buchanan v. United States*, 915 F.2d 969, 969–70 (5th Cir.1990).